UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARK RICHARDSON, | |
| Plaintiff, | Case No. 1:16-cv-3027 |
| v. | |
| CHICAGO TRANSIT AUTHORITY, | Judge John Robert Blakey |
| Defendant. | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Mark Richardson brings this suit against his former employer the Chicago Transit Authority (CTA) for disability discrimination under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* [1]. Plaintiff moved for partial summary judgment on the issue of whether his obesity constitutes a disability under the ADA. [83, 85]. Defendant CTA cross-moved for summary judgment on the grounds that Plaintiff cannot establish he was "regarded as" disabled by the CTA, as required to sustain his discrimination claim. [92]. For the reasons explained below, Plaintiff's motion is denied and Defendant's motion is granted.

### I. Background[1]

Defendant employed Plaintiff as a full-time bus operator from at least August 1999 until at least February 2012. PSOF ¶ 2. Medical evaluations performed by

---

[1] The facts are taken from the parties' Local Rule 56.1 statements. "PSOF" refers to Plaintiff's statement of undisputed facts [84], with Defendant's responses cited as "R. PSOF," [105]. "DSOF" refers to Defendant's statement of undisputed facts [94]. "PSAF" refers to Plaintiff's statement of additional facts [97], with Defendant's responses cited as "R. PSAF," [110]. "DSAF" refers to Defendant's statement of additional facts [106], with Plaintiff's responses cited as "R. DSAF," [111]. References to additional filings are by docket entry number.

CTA doctors in January 2005 and May 2009 show that Plaintiff weighed 350 pounds and 566 pounds, respectively, at the time of these evaluations. *Id.* ¶¶ 30–31. Standardized height and weight guidelines indicate that someone of Plaintiff's height suffers from "extreme obesity"—formerly known as "morbid obesity"—when weighing 315 pounds or more. *Id.* ¶¶ 28–29; *see also* [87] at 2–3.

In 2010, CTA instruction for bus operators generally included multiple categories of training, including return-to-work training and special assessments. PSOF ¶ 4. Return-to-work training was provided to bus operators who were off work for six to twelve months. *Id.* ¶ 5. Special assessments, also known as safety assessments, occurred upon the request of a manager or CTA's safety, legal, or medical departments, and required the bus operator to perform all standard operating procedures on all equipment that CTA operated that was then in service. *Id.* ¶ 6. Plaintiff contends that CTA had a practice of referring any driver weighing over 400 pounds to CTA's safety department to determine if he or she could safely drive a bus. *Id.* ¶¶ 11–14. Defendant disputes that this policy applied to all drivers weighing over 400 pounds, though it admits that some bus operators who weighed over 400 pounds were referred for evaluation to see if they could safely operate a bus. R. PSOF ¶¶ 11–14.

The CTA and the union representing its bus operators and instructors are parties to a collective bargaining agreement (CBA) covering the period from January 2007 through December 2011. PSOF ¶¶ 15–16. The CBA provides for "Area 605": an administrative holding area that allows full-time employees with a

2

medical diagnosis that prevents them from working to be off work for a period specified in the CBA. *Id.* ¶¶ 16–17. CTA's Disability Review Committee (DRC) reviews management recommendations for transfers to Area 605 and determines whether an employee is eligible for transfer. *Id.* ¶ 19. To be reinstated from Area 605 to an employee's former position, the employee must receive a medical release from a doctor, complete a return-to-work package with CTA's Benefits Services Department, and report to CTA's medical services provider, who determines if the employee is fit to return to work. *Id.* ¶ 24.

Beginning in February 2010, Plaintiff was off work with the flu. *Id.* ¶ 32. In April 2010, the DRC transferred Plaintiff to Area 605. *Id.* ¶ 35. In September 2010, Advanced Occupational Medical Services (AOMS), CTA's third-party medical services provider, documented that Plaintiff was 71 inches tall, weighed 594 pounds, and was fit to return to work, subject to clearance by CTA's safety department. *Id.* ¶ 36.

Body Mass Index (BMI) is the ratio of a person's weight to height that is used to assess whether an individual is underweight, within the normal range, overweight, or obese. *Id.* ¶ 25. A BMI between 18.5 and 24.9 is within the normal range. *Id.* ¶ 27. At the time of the September 13, 2010 evaluation, Plaintiff had a BMI of 82.8, or 233% above top of end of the normal range for BMI. *See* [85] at 4.

On the same day as the AOMS evaluation, CTA transferred Plaintiff out of Area 605 and back to his full-time bus operator position. PSOF at ¶37. Plaintiff contends that Defendant required him to submit to a special assessment before

3

returning to work solely because his weight exceeded 400 pounds. *Id.* ¶¶ 38–39. Defendant denies this and instead claims that Plaintiff underwent a special assessment based upon AOMS' referral and to ensure that he could safely operate a bus. R. PSOF ¶ 39.

Marie Stewart, CTA's Acting Manager II of Bus Instruction, assigned John Durnell and Elon McElroy to conduct Plaintiff's special assessment. PSOF ¶ 40. Plaintiff contends that the post-assessment reports Durnell and McElroy produced contained numerous references to Plaintiff's size and weight. *Id.* ¶ 41. McElroy documented that Plaintiff had to lean against the bus while performing the pre-trip inspection and that he was sweating because he "appeared to be unhealthy." *Id.* ¶ 44. McElroy testified that Plaintiff could not perform "hand-over-hand" turning because of his stomach. *Id.* ¶ 48. Durnell and McElroy testified that Plaintiff was unable to stop "cross-pedaling"—having part of his foot on the gas and brake pedals at the same time—because of Plaintiff's size. *Id.* ¶¶ 49–50. Cross-pedaling and not using hand-over-hand turning are violations of CTA's required standard operating procedures for bus operators. DSAF ¶ 6.

Relying on the special assessment conducted by Durnell and McElroy, Stewart drafted a memo that concluded: "Based on the Bus Instructors [sic] observations and findings, the limited space in the driver's area and the manufacturer [maximum allowable weight] requirements, it would unsafe for Bus Operator Richardson to operate any CTA bus at this time." PSOF ¶ 52. In September 2010, relying on Stewart's memo, Earl Swopes, CTA's Vice President of

4

Bus Operations, initially instructed CTA's managers to start the process of terminating Plaintiff's employment, but later told CTA's managers to hold off pending a meeting among the managers. *Id.* ¶ 53. CTA did not allow Plaintiff to return to work in September 2010, or any time between then and his termination in February 2012. *Id.* ¶¶ 55, 63.

Plaintiff cites subsequent communications about his status between the manager of the garage where Plaintiff worked and Carla Jones, a member of the DRC.[2] *Id.* ¶ 21. In January 2011, the manager emailed Jones, stating that Plaintiff had been referred for a safety evaluation due to his weight, which he failed, and requesting that Jones place Plaintiff back in Area 605 to give him time to lose weight. *Id.* ¶ 57. Jones responded that she needed the safety report in order to place Plaintiff back in Area 605. *Id.* ¶ 58. In March 2011, the manager emailed Jones asking for an update on Plaintiff's status, stating he "was supposed to be placed in 605 months ago due to being found medically unfit." *Id.* ¶ 59.

The DRC transferred Plaintiff back into Area 605 during its meeting on March 11, 2011. *Id.* ¶ 60. The research notes prepared for the DRC in advance of the meeting indicated that Plaintiff had "exceeded the weight requirement to operate the bus." *Id.* ¶ 61; *see also* [89] at 34. In October 2011, CTA informed

---

[2] Defendant disputes the inclusion of facts that occurred after Plaintiff was not allowed to come back to work in September 2010 as immaterial to Plaintiff's claims. R. PSOF ¶¶ 57–59. Although not dispositive, the Court finds these facts sufficiently relevant to warrant inclusion. *Cf. Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006) (district court reasonably exercised its discretion to strike statement containing wholly "irrelevant information" and other prohibited materials). Defendant's objection to the emails as hearsay is misplaced, as they ostensibly constitute non-hearsay admissions by a party-opponent. *See* Fed. R. Evid. 801(d)(2)(D). Defendant's foundational objections are likewise unavailing here, because the emails were produced in discovery and may therefore be treated as authentic. *Fenje v. Feld*, 301 F. Supp. 2d 781, 809 (N.D. Ill. 2003).

Plaintiff that he could remain in Area 605 for an extra year if he provided medical documentation clearing him to return within that additional year. PSOF ¶ 62. In February 2012, CTA terminated Plaintiff's employment. *Id.* ¶ 63.

## II.     Legal Standard

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Spurling v. C & M Fine Pack, Inc.,* 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *See CTL ex rel. Trebatoski v. Ashland Sch. Dist.,* 743 F.3d 524, 528 (7th Cir. 2014).

## III.     Analysis

The ADA provides that no "covered entity shall discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). To prevail on an ADA claim, a plaintiff must show that: (1) he is disabled; (2) he is otherwise qualified to perform the essential functions of the job; and (3) his employer took an adverse job action against him on the basis of his disability. *Basden v. Prof'l*

*Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013). Here, the CTA, as an employer of more than 15 employees, constitutes a "covered entity" subject to the ADA. *See* 42 U.S.C. §§ 12111(2), (5). To prevail on his claim, Plaintiff must show that when CTA refused to let him return to work, it did so based upon a disability within the meaning of the ADA.

The ADA defines disability as: "(A) a physical or mental impairment that substantially limits one or major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A–C). Plaintiff alleges that Defendant refused to let him return to work because the CTA regarded him as too obese to work as a bus operator. [1] ¶ 12. To succeed on his "regarded as" claim, Plaintiff must establish that he was discriminated against "because of an actual or perceived physical or mental impairment." 42 U.S.C. § 12102(3)(A); *see also Silk v. Bd. of Trs., Moraine Valley Comm. Coll.*, 795 F.3d 698, 706 (7th Cir. 2015). Because the sole basis of Plaintiff's claim is that the CTA refused to let him return to work because of his obesity, Plaintiff must show that his obesity constitutes an actual physical impairment under the ADA or that the CTA perceived Plaintiff to have a qualifying physical impairment.

### A. Severe Obesity by Itself is Not a Physical Impairment Under the ADA

In its regulations implementing the ADA, the U.S. Equal Employment Opportunity Commission (EEOC) defines a physical impairment as any "physiological disorder or condition, cosmetic disfigurement, or anatomical loss

7

affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1). The EEOC's interpretive guidance elaborates:

> It is important to distinguish between conditions that are impairments and physical, psychological, environmental, cultural, and economic characteristics that are not impairments. The definition of the term "impairment" does not include physical characteristics such as eye color, hair color, left-handedness, or height, weight, or muscle tone that are within "normal" range and are not the result of a physiological disorder. The definition, likewise, does not include characteristic predisposition to illness or disease. Other conditions, such as pregnancy, that are not the result of a physiological disorder are also not impairments.

Appendix to Part 1630—Interpretive Guidance on Title I of the Americans with Disabilities Act, 29 C.F.R. app. § 1630.2(h).

In 2008, Congress passed the ADA Amendments Act of 2008 (ADAAA), Pub. L. 110-325, 122 Stat. 3553 (codified at 42 U.S.C. § 12101 *et seq.*). In doing so, Congress expressly rejected a line of Supreme Court cases raising the bar to establish an impairment by narrowing certain definitions not at issue in this case. *See* ADAAA, Pub. L. 110-325, § 2. Notably, the definition of physical impairment did not change under the ADAAA. *See id.*, § 3; 42 U.S.C. § 12102(1).

Both before and after passage of the ADAAA, federal courts have addressed whether extreme obesity qualifies as a disability under the ADA, although no court in the Seventh Circuit has done so. Defendant cites decisions from the Eighth, Sixth, and Second Circuits holding that obesity qualifies as an actual impairment under the ADA only if it occurs as a result of a physiological disorder or condition.

8

*See Morriss v. BNSF Ry. Co.*, 817 F.3d 1104, 1112 (8th Cir. 2016); *EEOC v. Watkins Motor Lines, Inc.*, 463 F.3d 436, 445 (6th Cir. 2006); *Francis v. City of Meriden*, 129 F.3d 281, 286 (2d Cir. 1997). Against that precedent, Plaintiff cites post-ADAAA district court opinions finding that extreme obesity may qualify as a disability under the ADA, regardless of whether it results from an underlying physiological disorder. *See EEOC v. Res. for Human Dev.*, 827 F. Supp. 2d 688, 695 (E.D. La. 2011); *McCollum v. Livingston*, No. 4:14-CV-3253, 2017 WL 608665, at *35 (S.D. Tex. Feb. 3, 2017).

Significantly, no federal appellate court has held that extreme obesity constitutes a disability under the ADA absent some underlying physiological basis. Instead, relying upon the purposes of the ADA, the circuit courts have ruled that obesity, by itself, fails to constitute a disability under the Act. In *Francis*, the Second Circuit rejected a plaintiff's claim that his employer discriminated against him when it suspended him for exceeding fire department weight guidelines. 129 F.3d at 282. The court stated that, under the EEOC interpretative guidance, weight is not a physical impairment, and to hold otherwise would open up the "regarded as" prong of the ADA "to a range of physical conditions—height, strength, dexterity, and left-handedness, for example—not meant to be covered" by the Act. *Id.* at 286 (internal quotation marks omitted). In *Watkins Motor Lines*, the Sixth Circuit rejected an EEOC claim that a dock worker's termination based upon morbid obesity violated the ADA. 463 F.3d at 438. The court declined to "extend ADA protection" to all "abnormal" physical characteristics. *Id.* at 443. The court

9

agreed with *Francis* that doing so "would make the central purpose of the statutes, to protect the disabled, incidental to the operation of the 'regarded-as' prong, which would become a catch-all cause of action for discrimination based on appearance, size, and any number of other things far removed from the reasons the statutes were passed." *Id.* (quoting *Francis*, 129 F.3d at 287).

Most recently, in another "regarded as" case decided post-ADAAA, the Eighth Circuit also held that obesity that does not result from an underlying physiological disorder or condition is not a physical impairment under the ADA. *Morriss*, 817 F.3d at 1112. In that case, the plaintiff first noted that the definition of the term "impairment" in the EEOC interpretive guidance "does not include physical characteristics such as eye color, hair color, left-handedness, or height, weight, or muscle tone that are within 'normal' range and are not the result of a physiological disorder." 29 C.F.R. app. § 1630.2(h). The plaintiff read this language to mean that "an individual's obesity must be the result of a physiological disorder only if his weight is within 'normal range.'" 817 F.3d at 1108 (citations omitted).

The Eighth Circuit rejected this interpretation. The court considered the interpretive guidance in its entirety, including its provision that other "conditions, such as pregnancy, that are not the result of a physiological disorder are also not impairments." 29 C.F.R. app. § 1630.2(h). The court concluded that "a more natural reading of the interpretive guidance is that an individual's weight is generally a physical characteristic that qualifies as a physical impairment only if it

10

falls outside the normal range *and* it occurs as the result of a physiological disorder." 817 F.3d at 1108.

The Eighth Circuit's analysis of the statutory text finds clear support in the EEOC interpretive guidance. The guidance distinguishes "between conditions that are impairments" and physical "characteristics that are not impairments," and then lists weight as a physical characteristic. 29 C.F.R. app. § 1630.2(h). Additionally, the relevant section of the interpretive guidance focuses upon limiting the definition of impairment rather than expanding it. *See id.* As such, it is logical to conclude, as did the Eighth Circuit, that a plaintiff within the normal weight range should be precluded from asserting that he has a weight-based physical impairment, regardless of whether his weight is affected by an underlying physiological disorder or condition.

Here, citing the EEOC guidance, Plaintiff interprets the physical characteristic of weight as a qualifying impairment if *either* of the following is true: (1) the employee's weight is not within the normal range; or (2) the weight is the result of a physiological disorder. [85] at 15. This overly-broad interpretation, however, would permit a plaintiff of normal weight to claim a weight-based physical impairment—a result that does not withstand scrutiny. Neither the statutory text, nor the EEOC's interpretive guidance, supports Plaintiff's contention that some types of physical characteristics may unconditionally qualify as physical impairments. *See* 29 C.F.R. app. § 1630.2(h).

Plaintiff points to out-of-circuit district court cases concluding that severe obesity can qualify as a physical impairment under the ADA. In *Human Development*, the EEOC alleged that a woman suffered from severe obesity, that her employer regarded her as disabled because of her obesity, and that the employer terminated her because of her perceived disability. 827 F. Supp. 2d at 691. The court quoted a 2009 EEOC Compliance Manual, which stated that while being overweight is not generally an impairment, "severe obesity, which has been defined as body weight more than 100% over the norm, is clearly an impairment." EEOC Compliance Manual: Section 902 Definition of the Term Disability § 902.2(c)(5)(ii). The court concluded that, giving this manual "appropriate deference, the Court should recognize that severe obesity qualifies as a disability under the ADA and that there is no requirement to prove an underlying physiological basis." 827 F. Supp. 2d at 695; *see also McCollum*, 2017 WL 608665, at *35 (same).

Plaintiff's reliance on *Human Development* and the manual, however, is unavailing. First, the EEOC has indicated that the ADAAA superseded the analysis in the manual (which has since been removed from its webpage).[3] Secondly, as the Eighth Circuit rightly held in *Morriss*, the manual's broad pronouncement on extreme obesity "directly contradicts the plain language" of the ADA, "as well as the EEOC's own regulations and interpretative guidance, which, as previously explained, all define 'physical impairment' to require an underlying

---

[3] The EEOC webpage states: "The Compliance Manual Section on the Definition of the Term 'Disability' has been removed from this website, since the analysis in it has been superseded by the ADA Amendments Act of 2008 (ADAAA)." U.S. EQUAL EMPLOYMENT OPPORTUNITY COMM'N, "Section 902 Definition of the Term Disability," https://www.eeoc.gov/policy/docs/902cm.html (accessed Sept. 22, 2017).

physiological disorder or condition." 817 F.3d at 1112. In light of the above, this Court declines to afford the manual any deference. *See Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (holding that agency interpretations contained in "enforcement guidelines" and agency manuals are "entitled to respect" only "to the extent that those interpretations have the power to persuade") (internal quotation marks omitted); *see also Clackamas Gastroenterology Assocs. v. Wells*, 538 U.S. 440, 449 n.9 (2003) (noting that "the EEOC's Compliance Manual is not controlling" though it may offer a "body of experience" to which courts "may resort for guidance") (citation omitted).

In sum, this Court concludes that severe obesity, by itself, fails to constitute a disability under the ADA. Rather, to qualify as a protected physical impairment, claimants under the ADA must show that their severe obesity is caused by an underlying physiological disorder or condition. This result follows from a plain reading of the ADA as amended and the EEOC's regulations and interpretive guidance on the definitions of disability and physical impairment. *See* 42 U.S.C. § 12102(1)(A–C); 29 C.F.R. § 1630.2(h)(1), app. § 1630.2(h); *see also Morriss*, 817 F.3d at 1112; *Watkins Motor Lines*, 463 F.3d at 445; *Francis*, 129 F.3d at 286.

Here, Plaintiff has offered no evidence that an underlying disorder or condition has caused his severe obesity. While Plaintiff claims to suffer from uncontrolled hypertension and sleep apnea, he has not contended or otherwise shown that these conditions constitute physiological disorders that, in fact, caused his obesity. *See* [85] at 3–4; *see also* [87]. Accordingly, Plaintiff has not shown that

13

he has a physical impairment within the meaning of the ADA and thus he has shown no factual basis for the underlying discriminatory conduct alleged.

### B. CTA Did Not Perceive Plaintiff to Have a Qualifying Physical Impairment

Plaintiff next contends that even if his severe obesity does not, by itself, qualify as an actual physical impairment, he is entitled to partial summary judgment under the "regarded as" prong of the ADA, because the CTA perceived him as having a physical impairment on the basis of his obesity. [85] at 17.

Plaintiff cites a pre-ADAAA case from the First Circuit for support. In *Cook v. State of R.I., Dep't of Mental Health, Retardation, and Hosps.*, an employer's nurse concluded that the plaintiff was morbidly obese. 10 F.3d 17, 20 (1st Cir. 1993). After the employer refused to hire the plaintiff, claiming that the plaintiff's obesity could limit her ability to evacuate patients in an emergency and put her at greater risk for heart disease, the plaintiff sued her employer for disability discrimination. *Id.* at 21. The plaintiff provided expert testimony establishing that her morbid obesity resulted from a physiological disorder. *Id.* at 23. The court concluded that the jury reasonably could have found that the plaintiff, although not handicapped, was treated "as if she had a physical impairment." *Id.*

Plaintiff cites *Cook* and argues that a "regarded as" claim may be established based upon a perceived impairment, regardless of whether that impairment actually constitutes a disability under the ADA. But a review of the ADA, its accompanying regulations, and *Cook* itself demonstrates that the reasoning in *Cook* fails to support Plaintiff's contention. A "regarded as" claim requires that the

14

plaintiff show discrimination "because of an actual or perceived physical or mental impairment." 42 U.S.C. § 12102(3)(A). Whether a plaintiff alleges discrimination based on a physical characteristic that is actual or perceived, that characteristic must still be a cognizable impairment under the ADA. *See Morriss*, 817 F.3d at 1113 (The "plain language of the ADA prohibits actions based on an existing impairment or the perception of an existing impairment.").

Because EEOC regulations clearly limit the definition of a physical impairment to a "physiological disorder or condition" that affects "one or more body systems," 29 C.F.R. § 1630.2(h)(1), a physical characteristic such as obesity, whether actual or perceived, must still be the result of an underlying physiological disorder or condition to qualify as an impairment under the ADA. *See Andrews v. Ohio*, 104 F.3d 803, 806 (6th Cir. 1997) (holding that "physical characteristics that are 'not the result of a physiological disorder' are not considered 'impairments' for the purposes of determining either actual or perceived disability.")

Significantly, the *Cook* court relied upon expert testimony establishing that the plaintiff's morbid obesity resulted from a physiological disorder. 10 F.3d at 23. By contrast, Plaintiff has provided no evidence here that his severe obesity results from any underlying physiological disorder or condition. As a result, Plaintiff has not established a key element of his "regarded as" claim: he has not shown that Defendant regarded him as having a qualifying physical impairment, because he has not alleged a physical impairment within the meaning of the ADA.

15

Accordingly, summary judgment for Defendant is granted. *Celotex*, 477 U.S. at 322 (summary judgment is appropriate as to a party who fails to establish "an element essential to that party's case, and on which that party will bear the burden of proof at trial."). Because Plaintiff's failure to establish an essential element of his ADA claim is sufficient for granting summary judgment, this Court need not reach Defendant's alternative arguments.

**IV.   Conclusion**

For the foregoing reasons, Plaintiff's motion for partial summary judgment [83] is denied, and Defendant's motion for summary judgment [92] is granted. Judgment is entered in favor of Defendant and against Plaintiff on Plaintiff's complaint [1].

Date: November 13, 2017

                                                     Entered:

                                                     John Robert Blakey
                                                     United States District Judge